573 So.2d 238 (1990)
Mr. & Mrs. John DOE[1]
v.
Mr. John SMITH.
No. 89 CA 1863.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
Writ Denied January 31, 1991.
*239 Robert E. Kleinpeter, Steven R. Giglio, Baton Rouge, for plaintiffs-appellants Mr. and Mrs. John Doe.
John W. Perry, Baton Rouge, for defendant-appellee Allstate Ins. Co.
Mary H. Barrios, Baton Rouge, for defendant-appellee Mr. John Smith.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

FACTS
On June 27, 1986, plaintiffs, Mr. & Mrs. John Doe individually and on behalf of their minor daughter, filed suit for physical, mental, and emotional damages against their neighbor Mr. John Smith. In their petition, plaintiffs alleged that between 1975 and December of 1984, Smith molested their minor daughter by performing numerous illicit acts, including fondling the child's genitals and forcing her to perform oral sex upon him.[2] Plaintiffs further alleged that Smith concealed his activities by threatening their minor daughter. Plaintiffs subsequently amended their petition naming Allstate Insurance Company (Allstate), Smith's homeowner's insurer, as an additional defendant.
Both Smith and Allstate answered plaintiffs' petitions denying the allegations. Thereafter, Allstate filed a motion for summary judgment attaching a copy of the policy of homeowner's insurance.[3] The matter was heard on July 21, 1989. On that same day, plaintiffs filed a rule seeking to compel Smith to submit to a mental examination to determine whether Smith had the requisite intent to invoke the exclusionary clause of the insurance policy. The trial judge subsequently granted Allstate's motion for summary judgment, dismissing plaintiffs' suit against Allstate and reserving plaintiffs' rights against Smith, and denied the plaintiffs' rule for mental examination for purposes of the summary judgment.[4]
From this adverse judgment, plaintiffs appeal assigning the following errors:
1. The trial court erred in granting summary judgment in favor of Allstate Insurance Company.
2. The trial court erred in applying Allstate Insurance Company's exclusionary clause and finding that the insured defendant intended bodily injury, or was substantially certain of bodily injury.
3. The trial court erred in refusing plaintiff's request for mental examination prior to ruling on Allstate Insurance Company's motion for summary judgment.
4. The trial court erred in apparently applying a presumption that the insured defendant intended the natural and probable consequences of his acts of nonviolent molestation of the minor herein.
5. The trial court erred in apparently applying a presumption that the insured defendant was sane.

*240 6. The trial court erred in presuming bodily injury.
The central issue presented is whether the language of the Allstate policy excludes coverage for Smith's alleged acts of molestation.

MENTAL EXAMINATION
Plaintiffs contend that the trial court erred in denying their request for a mental examination of Smith for purposes of the summary judgment. Plaintiffs also raise the issue of Smith's sanity.
First, we note that, in neither their pleadings nor at the motion for summary judgment, did plaintiffs allege that Smith was insane. On appeal, plaintiffs merely contend that the trial judge erred in presuming that Smith was sane.
The law is clear that the party alleging insanity bears the burden to affirmatively prove it, since the law presumes that all persons are sane. Preston v. Granger, 517 So.2d 1125, 1130 (La.App. 5th Cir.1987), writ denied, 519 So.2d 142 (La.1988); von Dameck v. St. Paul Fire & Marine Ins. Co., 361 So.2d 283, 286 (La.App. 1st Cir.), writs denied, 362 So.2d 794, 802 (La.1978). If, however, the presumption of sanity is successfully rebutted, the insurer then has the burden of proving the applicability of its exclusionary clause by a preponderance of the evidence or be cast in liability. Preston v. Granger, 517 So.2d at 1130; Nettles v. Evans, 303 So.2d 306, 309 (La.App. 1st Cir.1974).
Clearly, Smith is presumed sane, and, as plaintiffs did not rebut this presumption, they cannot now complain of any alleged application of this legal presumption.
Second, although plaintiffs made an allegation in their amended petition that Smith was "compelled" to perform the acts of molestation upon their child, they did not produce any evidence at the motion for summary judgment supporting this allegation. Instead, on the day of the hearing on the motion for summary judgment, plaintiffs filed a rule for a mental examination. Plaintiffs now complain that the trial court erred in granting the summary judgment without permitting their mental examination of Smith.
In Spellman v. Peoples Bank and Trust Company of St. Bernard, 544 So.2d 10, 11 (La.App. 4th Cir.), writ denied, 548 So.2d 327 (La.1989), and Fisk v. Mathews, 525 So.2d 223, 226 (La.App. 1st Cir.1988), the courts addressed similar issues regarding requested discovery and motions for summary judgment.
It is within the trial judge's discretion to grant a motion for summary judgment before the completion of discovery subject to the sole requirement that the parties are to be given an opportunity to present their claim. Simoneaux v. E.I. du Pont de Nemours & Co., Inc., 483 So.2d 908, 912 (La.1986); Spellman v. Peoples Bank and Trust Company of St. Bernard, 544 So.2d at 11.
In the instant case, Allstate filed its motion for summary judgment on May 4, 1989. Although it was originally scheduled to be heard on June 9, 1989, it was reassigned for hearing on July 21, 1989. Plaintiffs did not file their rule for the mental examination until July 21, the day of the hearing on the motion for summary judgment. The trial judge did not err in ruling on the summary judgment without requiring the mental examination.

SUMMARY JUDGMENT
We must now examine the motion for summary judgment together with its pleadings, affidavits, and exhibits to ascertain whether the trial court properly determined that Allstate is entitled to judgment as a matter of law.
It is well settled that a summary judgment should be granted only if there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Fisk v. Mathews, 525 So.2d at 226. Summary procedure should be used cautiously and sparingly, and any reasonable *241 doubt should be resolved against mover in favor of full trial on the merits. Penalber v. Blount, 550 So.2d at 583. The burden of proof is on the mover to establish there are no genuine issues of material fact. A "fact" is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. In other words, facts are "material" if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. This burden is exacting. Penalber v. Blount, 550 So.2d at 583; American Bank & Trust Co. v. Vinson, 528 So.2d 693, 694 (La.App. 2nd Cir.1988).
Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by sufficient evidence. Nathans v. Vuci, 443 So.2d 690, 696 (La.App. 1st Cir.1983). On a motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact. If they are not sufficient, the motion for summary judgment should be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence showing that a material fact is still at issue. At this point, the opposing party may no longer rest on the allegations contained in his pleadings. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980); Nathans v. Vuci, 443 So.2d at 690. If the moving party has established both that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to come forward with specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967.
In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d at 775; Chaisson v. Domingue, 372 So.2d at 1227.

INTENTIONAL INJURY EXCLUSION
Generally, the purpose of an intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Breland v. Schilling, 550 So.2d 609, 610 (La.1989). The purpose of liability insurance, on the other hand, is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage. Borden, Inc. v. Howard Trucking Company, Inc., 454 So.2d 1081, 1090 (La.1984); LeJeune v. Allstate Insurance Co., 365 So.2d 471, 479 (La.1978). And an exclusion from coverage should be narrowly construed. Snell v. Stein, 261 La. 358, 259 So.2d 876, 879 (1972).
In the instant case, plaintiffs alleged in their petition that Smith molested their minor daughter during an approximate ten-year period and that Smith thereafter concealed his activities by threatening the child. Plaintiffs subsequently amended their petition, alleging that Smith was "compelled" to commit these acts.
The Allstate policy provides the following exclusion:
1. We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person. (Underscore added).
Plaintiffs contend that this provision does not clearly and unambiguously exclude coverage for Smith's liability for the alleged acts of child molestation. In support of their position, plaintiffs rely heavily on Breland v. Schilling, 550 So.2d at 609 and Pique v. Saia, 450 So.2d 654 (La.1984). Plaintiffs' reliance on these cases, however, is clearly misplaced.
In Breland v. Schilling, the Louisiana Supreme Court, in interpreting a homeowner's liability insurance policy, determined *242 that the policy language excluding coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the Insured" excluded only the injury which the insured intended and not the injury the insured caused, however intentional the injury-producing act. The court contrasted the contract of insurance in Breland which excluded coverage only for those injuries which the defendant subjectively desired to inflict with the tort-based standard which exposes the actor to liability for injuries he did not in fact specifically envision or desire to produce, but which nonetheless flowed from his act. Accordingly, the court held that under the language of the policy:
[W]hen minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Breland v. Schilling, 550 So.2d at 614.
In Pique v. Saia, the Louisiana Supreme Court, in interpreting a homeowner's liability policy clause excluding coverage for "bodily injury ... which is either expected or intended from the standpoint of the Insured," determined that such provision excluded only injuries resulting from intentional acts and did not exclude the negligent acts committed by defendant.
The aforementioned cases and the cases which follow Breland and Pique are clearly distinguishable from the instant case.[5] The policy exclusions in Breland and Pique dealt with the narrow area of "bodily injury or property damage ... expected or intended" by the insured and not any "bodily injury ... which may reasonably be expected to result from the intentional... acts of an insured." (Emphasis added). The language of the Allstate exclusion clause in this case is significantly different from the provision in Breland and Pique. Here, the exclusion is not limited to the injury or damages intended by the insured, but broadly excludes coverage for all damages reasonably expected to result from an insured's intentional act, regardless of his intention to cause any of the damage suffered. See Travelers Insurance Company v. Blanchard, 431 So.2d 913, 915 (La.App. 4th Cir.1983).
To prevail on its motion for summary judgment in the instant case, Allstate must establish that Smith's molestation of the plaintiffs' minor daughter was an intentional act.
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court succinctly set forth the distinction between "act" and "intent" as follows:
Although the theorists have not always agreed, the words "act" and "intent" now have generally accepted meanings in the fields of tort and criminal law. The word act is used to denote an external manifestation of the actor's will which produces consequences. There cannot be an act subjecting a person to civil or criminal liability without volition. Therefore, a contraction of a person's muscles which is purely a reaction to some outside force, such as a knee jerk or the blinking of the eyelids in defense against an approaching missile, or the convulsive movements of an epileptic, are not acts of that person. Restatement (Second) of Torts, American Law Institute § 2 (1965); La.R.S. 14:8 comment. See also, Prosser, supra, § 8. LaFave and Scott, Criminal Law, § 25 (1972). The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that *243 that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Restatement (Second) of Torts, supra, § 8; LaFave and Scott, Criminal Law, § 28 (1972); see also, Prosser, supra, § 8.
. . . .
Our jurisprudence likewise reflects approval of the general notions of act and intent. This Court as early as 1936, approvingly recited the following: "It seems clear that, in the absence of language expressing a contrary meaning, an `act' involves an exercise of the will. It signifies something done voluntarily." Heiman v. Pan American Life Ins. Co., 183 La. 1045, 165 So. 195 (1936). Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
397 So.2d at 481.
The Restatement (Second) of Torts describes intended consequences as those which the actor knows are "substantially certain" to result from an act, whether the actor consciously desires those consequences or not. Restatement (Second) of Torts § 8A (1965). See also W. Prosser, Law of Torts § 8 (4th Ed.1971). The inquiry regarding intentional torts asks which consequences an objective reasonable person might expect or intend as the result of a deliberate act. Breland v. Schilling, 550 So.2d at 611.

a. intentional act.
An explanation of what constitutes an intentional act giving rise to an intentional injury is given in W. Prosser, Law of Torts, § 8 (4th Ed.1971) as follows:
An anarchist who throws a bomb into the royal carriage may actually wish to kill no one but the king; but since he knows that the death of others in the carriage is a necessary and almost inevitable incident to that end, and nevertheless goes ahead with that deed it must be said that he intends to kill them. The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with ... as though he had intended it. (Emphasis added).
We are cognizant of the jurisprudence supporting the notion that summary judgment is rarely appropriate for a determination of subjective facts such as intent, motive, malice, knowledge, or good faith. See Penalber v. Blount, 550 So.2d at 583; Caplan v. Pelican Homestead and Savings Association, 542 So.2d 622, 626 (La.App. 5th Cir.1989); Chelette v. Wal-Mart Stores, Inc., 535 So.2d 558, 560 (La.App. 3rd Cir.1988), writ denied, 537 So.2d 1170 (La.1989). In cases dealing with battery, theft and shootings, the facts may influence a finding of negligence rather than intentional conduct.[6]
However, child molestation is one such rare instance where a factual determination of negligence or intentional conduct is inappropriate as a practical matter. These types of acts cannot result from careless conduct and only occur as a result of a deliberate act by the perpetrator. Additionally, the alleged acts giving rise to the instant suit occurred repeatedly over an almost ten-year period. Clearly, Smith's acts of child molestation were deliberate and, therefore, intentional acts.

b. consequences an objective reasonable person might expect or intend as the result of a deliberate act.
Having determined that Smith's acts were intentional, we must determine what consequences an objective reasonable person might expect or intend as a result of a deliberate act of child molestation.
*244 In their petition, plaintiffs alleged that, as a result of the physical, mental, and emotional abuse of the molestation, the minor child has been permanently scarred psychologically as well as physically. Plaintiffs pray for damages for the child's psychological care, emotional pain and suffering, and impairment of the relationship among the parents and the child. These allegations clearly allege the kind of consequences an objective reasonable person might expect as a result of Smith's deliberate acts of molestation.
Accordingly, we find that the language of the Allstate policy excludes the reasonable consequences of Smith's deliberate acts of molestation and that the trial court did not err in granting Allstate's motion for summary judgment.

CONCLUSION
For the above reasons, that portion of the judgment of the trial court granting Allstate's motion for summary judgment and dismissing plaintiffs' claims against Allstate is affirmed. That portion of the trial court judgment refusing to require the physical examination of Smith for purposes of the summary judgment is affirmed.[7] Plaintiffs are cast for all costs.
AFFIRMED.
NOTES
[1] By order, dated June 27, 1986, this matter was filed Under Seal of Court, protecting the identity of the parties involved.
[2] During the time these alleged acts of molestation occurred, the Does' minor daughter was between three and twelve years old.
[3] Although Allstate's motion for summary judgment refers to a memorandum in support of its motion, the record does not contain memoranda in support of or in opposition to the motion for summary judgment.
[4] We note that Smith has not appealed or answered the appeal regarding the granting of Allstate's motion for summary judgment and the trial court's determination that his homeowner's liability insurance excluded the alleged acts of child molestation. In fact, in his brief to this court, Smith's arguments address only the propriety of the trial court's denial of plaintiffs' rule for a mental examination.
[5] See Baugh v. Redmond, 565 So.2d 953 (La. App. 2nd Cir.1990); Kersh v. Heffner, 542 So.2d 1118 (La.App. 5th Cir.1989); Fleming v. Aetna Casualty and Surety Company, 461 So.2d 614 (La.App. 1st Cir.1984), writ denied, 464 So.2d 302 (La.1985). In each of these cases, the policies provided exclusions identical to the language in Breland and Pique and follow the Breland and Pique rationale.
[6] As noted by Holmes, even a dog is capable of distinguishing "between being stumbled over and being kicked." Holmes, The Common Law, 3 (1881). See also Bazley v. Tortorich, 397 So.2d at 480.
[7] The trial court's reasons for judgment specifically denies plaintiffs' request for a mental examination of Smith for purposes of the summary judgment and grants Allstate's motion for summary judgment. The judgment, however, only specifically grants the summary judgment.