677 So.2d 1124 (1996)
August R. PRADILLO, Jr., et al.
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 96-C-1294.
Court of Appeal of Louisiana, Fourth Circuit.
July 17, 1996.
Tillery & Tillery, A. Scott Tillery, Timothy Thriffiley, Chalmette, for Respondent, August R. Pradillo, Jr., et al.
Donovan & Lawler, Christopher E. Lawler, Joseph F. d'Aquin, III, Metairie, for Relator, Allstate Insurance Company.
Law Office of Tonry and Ginart, Richard
A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Chalmette, for Respondent, Charles P. Winkler.
Before BARRY, BYRNES and MURRAY, JJ.
BARRY, Judge.
The trial court denied Allstate's motion for summary judgment on the issue of coverage. We grant certiorari and affirm.

Facts
The plaintiffs' mentally handicapped adult daughter was allegedly raped by Charles P. Winkler, her next door neighbor who is interdicted *1125 due to head injuries sustained in an automobile accident. The alleged victim testified by deposition that she was in Winkler's house on two occasions when he led her into his bedroom, disrobed her, and pushed her onto the bed against her will. Her testimony as to the extent of his actions was inconsistent in that she first denied, then alleged sexual intercourse.[1]
The plaintiffs alleged that their daughter's mental impairment precluded her informed consent to sexual activity, that Winkler was negligent "in failing to properly ascertain the degree of impairment of (the victim), failing to refrain from raping and molesting her, and failing to properly ascertain that her impairment precluded her giving consent to sex, and failing to obtain her informed consent before engaging in sexual activity."
Allstate, Winkler's liability insurer, moved for summary judgment based on the intentional and criminal acts exclusions of its policy. The trial court ruled that the defendant's mental capacity to commit an intentional tort or criminal act is an issue of material fact and denied summary judgment.

Summary Judgment
La.C.C.P. art. 966, which governs summary judgment, was amended by Acts 1996, 1st Ex.Sess. No. 9. Under that amendment summary judgment is "favored," Art. 966(A)(2), although the "burden of proof shall remain with the mover," Art. 966(G). The pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, must show that there is no genuine issue of material fact and that the mover is entitled to summary judgment as a matter of law. Art. 966(B). Act 9 amended the showing which is required of the adverse party if the motion shows that there is no genuine issue of fact and that the mover is entitled to judgment as a matter of law. See La.C.C.P. art. 966(C). We apply the amendment because the hearing on the motion for summary judgment was held May 3, 1996 and the judgment is dated May 13, 1996, after the effective date of the amendment.

Analysis
Generally the insurer must prove that an exclusion for intentional injury applies. Yount v. Maisano, 627 So.2d 148, 151 (La. 1993); Smith v. Perkins, 94-1270, 94-1271 (La.App. 4 Cir. 12/28/94), 648 So.2d 482, 484, writ den. 95-0267 (La. 3/24/95), 651 So.2d 292. The intentional injury exclusion restricts liability insurance coverage by denying coverage to an insured
in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages.
Breland v. Schilling, 550 So.2d 609, 610 (La. 1989), quoting Transamerica Insurance Group v. Meere, 143 Ariz. 351, 694 P.2d 181, *1126 186 (1984); Smith v. Perkins, 648 So.2d at 484.
Allstate argues that the policy exclusions for intentional and criminal acts exclude coverage as a matter of law for alleged damages resulting from sexual molestation or rape.
Allstate's policy excludes coverage for intentional and criminal acts:
1. We do not cover bodily injury or property damage resulting from:
a) an act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; or
b) an act or omission committed by an insured person while lacking the mental capacity to control his or her conduct or while unable to form any intent to cause bodily injury or property damage. This exclusion applies only if a reasonable person would expect some bodily injury or property damage to result from the act or omission.
2. We do not cover bodily injury or property damage resulting from:
a) a criminal act or omission; or
b) an act or omission which is criminal in nature and committed by an insured person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.
The policy excludes coverage for bodily injury from an act intended or expected to cause bodily injury and, where the insured is unable to form the necessary intent, applies a reasonable person standard to determine whether the exclusion applies. Similarly, the policy excludes injury resulting from a criminal act even where the insured lacks the mental capacity to form the necessary intent.
Shaw v. Bourn, 615 So.2d 466 (La.App. 4th Cir.), writs den. 618 So.2d 409, 412 (La.1993) involved a claim for damages resulting from the sexual molestation of a minor. The jury rendered a verdict for the plaintiffs, and this Court reversed on the issue of insurance coverage. The insurance policy excluded coverage for bodily injury resulting from an act:
(1) that is intended by any insured to cause harm; or
(2) that an insured could reasonably expect would cause harm.
Shaw held that under the reasonable person standard mandated by the policy language, child molestation is per se an intentional act for which coverage is excluded.
In Smith v. Perkins, supra, plaintiffs sued for damages resulting from the sexual molestation of two minors. The insurers were dismissed on summary judgment based on the exclusionary clauses. The policies excluded coverage for bodily injury that is "expected or intended from the standpoint of the Insured" and "expected or intended by a Covered Person." The defendant testified by deposition that the sexual molestation was not an accident. This Court held:
the circumstances clearly demonstrate that he intended the resulting damage and injury.... (A)s a matter of law, the mere commission of sexual molestation on a juvenile is sufficient to establish that any resultant injury is "expected or intended from the standpoint of the Insured" ... or "... by a Covered Person"....
Smith v. Perkins, 648 So.2d at 486.
This case is distinguishable because the victim is an adult (twenty-one at the time of the alleged offense). The issue is whether Shaw and Smith should be applied based on the victim's mental handicap which causes her to function at the level of a younger person.
Doe v. State, Department of Health & Human Resources, 623 So.2d 72 (La.App. 1st Cir.), writ den. 627 So.2d 653 (La.1993) applied the rule to a case which alleged molestation of a mentally handicapped adult by an employee of the Southwest State School and affirmed the dismissal of the insurers on summary judgment. The policy excluded coverage for bodily injury "which is expected or intended by the insured," and the perpetrator knew the victim was mentally *1127 handicapped. The Court held that the policy excluded coverage:
The case currently under review differs factually [from established jurisprudence] in that the victim of molestation was approximately twenty-nine years old at the time of the offenses; however, the victim was mentally retarded, having a mental age of approximately six to seven years old. The perpetrator admitted in deposition that he knew the mental capacity of the victim.... (W)e find that the psychological damage sustained by the adult-mentally-handicapped victim would be the type of consequences that an objective reasonable person might expect.
Doe v. State, Department of Health & Human Resources, 623 So.2d at 74.[2]
According to the affidavit of clinical psychologist Kim E. Van Geffen, Ph.D., the victim functions on a second or third grade level, has "atypical psychosis, adjustment disorder with mixed emotional features, and mild mental retardation." Winkler stated that he thought the victim was "slow" but he did not know the extent of her mental handicap.
Although it might ultimately be determined that the severity of the victim's mental handicap warrants extension to this case of the jurisprudential rule excluding coverage for sexual molestation of a minor, issues of material fact remain. The record does not establish the facts surrounding the incident (the victim's deposition is very inconsistent), what a reasonable person would expect or intend to result from that incident, or the full implications of the victim's handicap. The victim, diagnosed with mild mental retardation, stated that she attended Andrew Jackson (apparently a public high school in New Orleans). The record does not establish whether her handicap prevented her from understanding the nature of a sexual act.
Belsom v. Bravo, 94-876 (La.App. 5 Cir. 4/25/95), 658 So.2d 1304, writ den. 95-1327 (La. 9/1/95), 659 So.2d 737, extended the "inferred intent rule" to "a sexual assault case, regardless of the age of the persons involved." Id. at 1308. The victim was seventeen and not handicapped. However, two judges concurred in the result only and disagreed with application of the inferred intent rule to a sexual molestation case of an adult. We do not agree that intent should be legally inferred in all cases of alleged molestation regardless of the victim's age. We decline to follow Belsom.
Denial of summary judgment was proper.
AFFIRMED.
NOTES
[1] Q. Did he do anything else in addition to kissing you on your vagina?

A. No, not anything else.
* * * * * *
Q. Just so I make sure I understand, the first time that you had any involvement with Mr. Winkler was the time where he kissed you on your vagina; is that right?
A. Uh-huh.
Q. Did he do anything else that time other than kiss you on your vagina?
A. No.
Q. What actually did Pete do the second time once he took your clothes off?
A. I don't remember, okay.
* * * * * *
Q. Well, did he kiss your vagina again?
A. Yes.
Q. Did he do anything else?
A. No, not anything else.
* * * * * *
Q. Did Pete ever stick his penis into your vagina?
A. He did.
* * * * * *
Q. Well, the first time did he stick his penis in your vagina?
A. Yes.
Q. He did that the second time, too?
A. Uh-huh [Yes.]
[2] Doe is significant for its extension of the inferred intent rule where the victim is an adult with a mental handicap and the perpetrator was aware of the victim's limitations. Although Doe`s application of the reasonable person standard to the exclusionary clause (which excluded coverage for bodily injury expected or intended "by the insured") is not in accord with this Court's application of the subjective intent standard in Hackett v. Schmidt, 630 So.2d 1324 (La. App. 4th Cir.1993), writ den. 94-0266 (La. 4/4/94), 635 So.2d 1123 (where the policy excluded coverage for bodily injury "intentionally caused by an insured person"), that distinction is immaterial here because the Allstate policy mandates application of a reasonable person standard.