709 So.2d 1041 (1998)
Benoit STEIN, Individually and as The Natural Tutor of His Minor Daughter, Rhiannon Marie Stein, and Lynn Stein
v.
Reverend E.J. MARTIN, Saint Bernard United Methodist Church, Inc., ABC Insurance Company, DEF Insurance Company, and XYZ Insurance Company.
No. 97-CA-2012.
Court of Appeal of Louisiana, Fourth Circuit.
March 18, 1998.
Martin E. Regan, Jr., Regan & Boshea, New Orleans, for Appellants.
James Ryan, III, Glen E. Mercer, Sessions & Fishman, New Orleans, for Appellees.
Donald E. McKay, Jr., Leake & Andersson, L.L.P., New Orleans, for Appellee.
Before KLEES, BYRNES and PLOTKIN, JJ.
BYRNES, Judge.
Plaintiffs, Benoit Stein, individually and as the natural tutor of his minor daughter, Rhiannon Marie Stein, and Lynn Stein sued the Reverend E.J. Martin, the Saint Bernard United Methodist Church, Inc., the church of which the Reverend Martin was pastor, the Louisiana Conference of the United Methodist Church, Inc. (hereinafter referred to as the "Louisiana Conference"), and the Church Mutual Insurance Company, the insurer for the Saint Bernard United Methodist Church, for damages arising out of the alleged molestation of the child, Rhiannon Marie Stein by the Reverend E.J. Martin.
On October 23, 1996, judgment was rendered in favor of the St. Bernard United *1042 Methodist Church, Inc. dismissing plaintiffs' claims against the church pursuant to a peremptory exception of no cause of action.
On November 20, 1996 judgment was rendered in favor of the Louisiana Conference dismissing plaintiffs' claims against it pursuant to a peremptory exception of no cause of action.
On March 27, 1997 the Supreme Court granted the plaintiffs' application for writs in connection with these adverse judgments and ordered that:
The case is remanded to the district court with instructions to treat the pleading entitled Notice of Intent to Apply for Supervisory Writs as a petition for devolutive appeal from the appealable judgment maintaining an exception of no cause of action, and to grant a devolutive appeal to plaintiffs.
Subsequently, on July 21, 1997, the trial court granted the motion for summary judgment of the Church Mutual Insurance Company, dismissing plaintiffs' claims against it.
Plaintiffs appealed. This Court issued an order noting that the order of the Supreme Court dated March 27, 1997 remanding to the trial court, although mandatory, was not self-executing. This court further noted that the record as originally presented to this court contained no documentary evidence whether the trial court had ever done anything to comply with the order of the Supreme Court as required. The motion and order for devolutive appeal signed by the trial court on August 1, 1997 refers only to the judgment of July 21, 1997, the last of the above referenced judgments. It is the opinion of this Court that in the absence of any proof in the record of the trial court having granted the appeal as ordered of the first two above mentioned judgments, that those judgments are not properly before this court as part of this appeal. Therefore, the plaintiffs were ordered to supplement the record with proper documentation of the trial court's action in response to the Supreme Court Order of March 27, 1997, failing which this Court indicated that it would dismiss this appeal insofar as it involved issues and appellees involved in the judgments of October 23, 1996 and November 20, 1996. The plaintiffs offered no such documentation and made no response or objection to the order of this Court. Accordingly, this Court issued an order dated February 25, 1998, limiting this appeal to the judgment signed by the trial court on July 21, 1997.[1] As the Church Mutual Insurance Company was the only defendant affected by the judgment of July 21, 1997, this appeal is limited to plaintiffs' claims against Church Mutual. Plaintiffs' claims against other defendants will not be considered on this appeal.
The named insured under the Church Mutual policy is designated as the St. Bernard United Methodist Church. In addition to the named insured the policy also insured:
Any officer, director, fiduciary, elder, deacon, vestryman, councilman, clergyman or any member of the Board of Trustees, governors or Board of Education, but only while acting within the scope of his duties as such.[2]
This provision is broad enough to include Reverend Martin as an insured, but does not make him a named insured. Moreover, the policy specifically excludes "personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured."[3] But the plaintiffs note that there is a specific "SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY COVERAGE"[4] that forms part of the policy. The first paragraph of this sexual misconduct form declares that:
Except for the insurance provided by this coverage form, the policy to which this *1043 coverage form is attached does not apply to any claim or suit seeking damages arising out of any actual or alleged act of sexual misconduct or sexual molestation.
This language clearly and unambiguously tells us that any language elsewhere in the policy which might otherwise arguably provide coverage for sexual molestation must be disregarded and the insured is directed to refer only to this form (C 215) to determine whether sexual misconduct coverage exists. The next paragraph provides that:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to any person arising out of sexual misconduct or sexual molestation which occurs during the policy period.

This form then goes on to list several exclusions clearly labeled as such, the very first among which is the following:
This insurance does not apply:
1. To any person who personally participated in any act of sexual misconduct or sexual molestation.
This language clearly and unambiguously excludes coverage for the alleged acts of the Reverend Martin. Plaintiffs contend that the exclusion denying coverage for any person who participates in the sexual molestation for which coverage is sought conflicts with or is made ambiguous by the language in the immediately preceding paragraph providing for coverage for such acts generally. The gist of plaintiffs' argument is that it is inconsistent for the policy to say that it provides coverage for sexual molestation, but then deny it for the person who actually commits the act. In other words, the plaintiffs contends that such insurance is illusory in the sense that if it does not provide coverage for the perpetrator it is the same as providing no insurance at all. That is not the case. Although the Reverend Martin is an insured under the policy, he is not the named insured. The named insured is the St. Bernard United Methodist Church. The policy is primarily for the protection of the church as the named insured, and only incidentally for the protection of the Reverend Martin. This is not a general form policy intended to be used interchangeably by both religious entities and individuals depending on which is designated as the named insured. At the outset the policy is designated as a "Church Package Policy." The liability section of the policy is designated as "Comprehensive Church Liability." Page two of the pre-printed liability section form C201 (10-82) reference is made to the "religious organization designated in the declarations as the named insured." It is clear that the sexual molestation insurance is to protect the church from, among other things any liability exposure it may have for the acts of such persons as the Reverend Martin for whose acts the church may ultimately be held responsible. The policy is obviously not intended to protect the perpetrator of such acts from responsibility and liability for his intentional acts of this kind, for as this court noted in Shaw v. Bourn, 615 So.2d 466, 470 (La.App. 4 Cir.1993), writ denied 618 So.2d 412 quoting from Wallace v. Cappel, 592 So.2d 418 (La.App. 1 Cir.1991) writ denied 593 So.2d 651 (1992):
Child molestation is a rare instance in which a factual determination of negligence or intentional conduct is inappropriate as a practical matter. It cannot result from careless conduct and only occurs as a result of a deliberate act by the perpetrator. Molestation of a child is a deliberate act, and therefore is an intentional act.
In Shaw v. Bourn, supra, at p. 470, this court also explained the intentional acts exclusion, quoting from Doe v. Smith, 573 So.2d 238 (La.App. 1 Cir.1990), writ denied 573 So.2d 1139 (La.1991):
Generally, the purpose of an intentional injury exclusion is to restrict liability insurance coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper" for damages.
Shaw, 615 So.2d at 470.
The policy exclusion quoted above for "personal injury arising out of the wilful violation *1044 of a penal statute or ordinance committed by or with the knowledge or consent of any insured," is just such an intentional injury exclusion as was approved of by this Court in Wallace. Where child molestation is involved the public policy favors holding the molester responsible:
This is a case about personal responsibility. Mr. Bourn is personally responsible for his acts of molestation and he is personally liable for them. The general theory of insurance is that certain losses are diffused among all members of society and this makes sense especially in case of losses due to floods, hurricanes, earthquakes, and other natural disasters. But the cost of damage caused by sexual molestation is not a burden that society as a whole should bear. It is an intentional act and it is a burden to be laid squarely upon the shoulders of the molester.
Therefore, we find that Church Mutual Insurance Company policy does not afford coverage for the benefit of Reverend Martin under the facts of this case.
However, plaintiffs have raised the question of the independent negligence of the Church, e.g., in spite of the Church's knowledge of prior sexual allegations against Reverend Martin, the Church still placed him in a position that enabled him to commit the acts of molestation that are the subject of this suit. Since the general provision of the policy exclude coverage for the molester under the intentional injury exclusion discussed previously, and the specific provisions of the sexual molestation form also exclude coverage for the molester, if the sexual molestation coverage form is to have any meaning at all (and we must assume that it does) it would be to provide negligence coverage to insureds other than the molester, especially the Church.
Act 483 of 1997, which is retroactive in its application,[5] now permits partial summary judgments as to particular issues. Therefore, we are now permitted to affirm in part, and hereby do so, the dismissal of the claim against Church Mutual to the extent that we hold that Church Mutual is not required to provide coverage for Reverend Martin; but we reverse the judgment of July 21, 1997 to the extent that it would deny the plaintiffs the opportunity to pursue negligence claims against other insureds, e.g., the Church.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Through clerical error the order erroneously stated August 1, 1997. However, it is clear from the context of the record that the judgment referred to was the one rendered on July 21, 1997, and that none of the parties were misled or prejudiced by this error.
[2] Form C201 (10-82) Comprehensive Church Liability, p. 2.
[3] Form C201 (10-82) Comprehensive Church Liability, p. 4.
[4] Form C 215 (11-85).
[5] Young v. Dupre Transport, 97-0591 (La.App. 4 Cir. 10/1/97); 700 So.2d 1156.